**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE L. STEIGERWALD, ) | |
| ) | CASE NO.   1:12-cv-02739 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE LESLEY WELLS |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Stephanie L. Steigerwald ("Plaintiff") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I. Procedural History**

On June 17, 2009, Plaintiff filed an application for POD, DIB, and SSI alleging a disability onset date of May 26, 2009. Her application was denied both initially and upon reconsideration.

On March 25, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 37.) On April 22, 2011, the ALJ found Plaintiff was able to perform a significant number of jobs in

the national economy and, therefore, was not disabled. (Tr. 45.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-one at the time of her administrative hearing, Plaintiff is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 44.) Plaintiff has a high school education and past relevant work in restaurant and customer service jobs. *Id.*

*Hearing Testimony*

At the hearing, Plaintiff testified as follows:

- She last worked in 2009. (Tr. 57.)

- She started using a cane in 2009. (Tr. 62.) An urgent care physician told her to use a cane if it helped. She said it helped significantly. (Tr. 60, 62.) She still cannot walk long distances, but the cane helps her "get around" and helps her balance. (Tr. 60, 62.)

- Her condition changed drastically in May of 2009. It has further deteriorated since then. She can no longer play sports or go places due to pain. She experiences stiffness in her shoulders and leg, spasms in her back, and sharp pain. (Tr. 61-62.)

- She can stand about ten minutes before experiencing pain. (Tr. 62-63.) "Changing positions for a second" helps relieve her pain. She can sit for half an hour before needing to change positions. However, she cannot simply alternate between sitting and standing, as she sometimes needs to lay down "to release all the pressure." She lays down approximately three times or more per day to try and obtain relief. (Tr. 63.)

- She has problems using her hands due to carpal tunnel syndrome. (Tr. 63-64.)

- She has difficulty sleeping and cannot lay in one position for more than one-half hour due to sharp pain. Her intermittent sleep causes her to feel tired and exhausted all day. (Tr. 64.)

- She was not receiving any treatment for mental health issues due to financial problems. She stopped taking Cymbalta because she could not afford it. (Tr. 64.)

- Her doctors prescribed muscle relaxants for her back spasms, but they did not help. (Tr. 66.)

- She is not receiving any treatment for her physical ailments, again due to financial issues. (Tr. 67.) She does not take any prescription medications. She uses over-the-counter aspirin, but it is not effective. (Tr. 68.)

- She did not believe she could perform her last job as a customer service representative because she could not sit all day. Her need to get up and move around would not be tolerated. (Tr. 68.) She also indicated that her pain would inhibit her ability to maintain concentration. (Tr. 69.)

- Her doctor told her she was not a candidate for back surgery but she "never got a straight answer as to the reason why." (Tr. 72.) She never sought a second opinion. (Tr. 73.)

- She has not gone to the emergency room for pain. (Tr. 73.) She wanted to avoid incurring bills that she would be unable to pay. *Id.*

The ALJ posed the following hypothetical question to the VE:

Please assume you're dealing with an individual the same age as the claimant with the same educational background and work experience. Further assume this individual retains the [RFC] for sedentary work with a sit/stand option.

(Tr. 80.) The VE sought clarification regarding the sit/stand option. *Id*. The ALJ explained that the hypothetical individual would need to change positions more often than once an hour – about every thirty minutes – but would not need to walk around much, but simply get up at one's work station. (Tr. 80, 82.) The VE testified that such an individual could not perform Plaintiff's past restaurant jobs per the Dictionary of Occupational Titles ("DOT"), but could perform them at the sedentary level as performed by Plaintiff. (Tr. 81.) The VE further testified that such an individual could perform Plaintiff's past relevant work as a charge account clerk and data entry clerk. *Id*. The VE also identified the following jobs that such an individual could perform: document preparer, microfilm – DOT 249.587-018 (1,110 jobs in Ohio, 31,040 nationally); final assembler, optical – DOT 713.687-018 (1,960 jobs in Ohio, 280,160 nationally); and, semiconductor bonder – DOT 726.685-066 (270 jobs in Ohio, 43,690 nationally). *Id*. The ALJ sought clarification whether the jobs identified allowed for a sit/stand option consistent with the hypothetical. (Tr. 81-82.) The VE testified that a sit/stand option as described "would not be problematic." (Tr. 82.) The VE stated that her testimony was not inconsistent with the DOT. (Tr. 83.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments,

3

that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Plaintiff was insured on her alleged disability onset date, May 26, 2009, and remained insured through the date of the ALJ's decision, April 22, 2011. (Tr. 39.) Therefore, in order to be entitled to POD and DIB, Plaintiff must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Plaintiff established a medically determinable, severe impairment, due to degenerative disc disease of the lumbar spine with multi-level herniation and obesity. (Tr. 39.) However, her impairments, either singularly or in combination, did not meet or equal one listed

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 40.) Plaintiff was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 44.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Plaintiff was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the

5

regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Hypothetical Omitted Use of Cane*

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir.1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Plaintiff argues that the ALJ posed an inaccurate hypothetical to the VE, because it

omitted any mention of Plaintiff's need for a cane. (ECF No. 13 at 6-7.) Because she was limited to sedentary work with a sit/stand option, Plaintiff argues that inclusion of an additional limitation that she use a cane for ambulation and balance may have eroded the occupational base to such an extent that there would not be sufficient jobs available. *Id*. The Plaintiff and Commissioner agree that the operative law on this point is governed by Social Security Ruling ("SSR") 96-9p, which states as follows:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. [footnote 7] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> [footnote 7] Bilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 (1996).

The Commissioner argues that Plaintiff's use of the cane was not medically required, because medical documentation did not establish the need for a hand-held assistive device, nor did the documentation describe the circumstances for which a cane was needed. (ECF No. 14 at

15-16.)  The Commissioner's argument, however, points to evidence in the record capable of supporting such a finding rather than rely on the reasons articulated by the ALJ.  The Court cannot engage in *post hoc* rationalizations. *See S.E.C. v. Chenery*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) (a reviewing court must judge the propriety of agency action "solely by the grounds invoked by the agency").

The question before the Court is whether the ALJ accepted that use of a cane was medically required.  Plaintiff argues that this question must be answered in the affirmative, as the ALJ implicitly found that cane use was necessary.  (ECF No. 13 at 6-7.)  In support, Plaintiff points to the ALJ's statement that: "[a]s observed at hearing, the claimant uses a cane to aid in her balance."  (Tr. 43.)  In addition, Plaintiff argues as follows: "[t]he reason given in the decision for rejecting the opinions of the State agency consultants also necessarily implies that use of a cane is necessary: in rejecting the state agency consultants' opinions, '[t]he undersigned finds that the State agency consultants' assessments failed to consider the claimant's use of a cane for balance in ambulation.'"  (ECF No. 13 at 7, *citing* Tr. 44.)

The Commissioner counters that the ALJ's mere observation does not equate to an affirmative finding that use of a cane was medically required.  (ECF No. 14 at 15.)  If the ALJ's observation that the Plaintiff was using a cane at the hearing was the sum of the discussion on the issue, the Court would be inclined to agree with the Commissioner.  However, considering the ALJ's decision as a whole, the most reasonable reading is that the ALJ found Plaintiff's need for cane to balance in ambulation was medically required.  To find otherwise would render the opinion internally inconsistent.  Had the ALJ not believed a cane was medically required, discrediting the State Agency consultants' opinions on the basis that they failed to account for Plaintiff's "use of a cane for balance in ambulation" could not be reconciled.  (Tr. 44.)  While the Commissioner may be correct – that substantial evidence could have supported a finding that a hand-held assistive device was not medically required – it does not appear that the ALJ agreed, and it is the ALJ's opinion that this Court must review.

As indicated in SSR 96-9p, "the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of

a neurological impairment) may be significantly eroded."   Here, the ALJ did not obtain testimony from the VE that would have clarified the extent of the jobs available had this additional limitation been considered.  Because the hypothetical was, based upon the ALJ's opinion as a whole, inaccurate, the VE's resulting responses could not be relied upon.  Therefore, the ALJ's finding at Step Five of the sequential evaluation – a step where the Commissioner bears the burden – was not supported by substantial evidence.  *See, e.g., Young v. Califano*, 633 F.2d 469, 470 (6th Cir. 1980) ("When an applicant for disability benefits establishes his inability to return to his former occupation, the burden shifts to the Secretary to show that the plaintiff retains residual capabilities which would permit him to engage in other substantial gainful employment."); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) (a claimant establishes a *prima facie* case of disability by showing that he has a medical basis for an impairment that prevents him from engaging in his particular occupation, at which point it becomes the Secretary's burden to establish the claimant's ability to work); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794 (6th Cir. 2004).

Upon remand, the ALJ should clearly indicate whether the use of a hand-held assistive device was medically required and, if so, provide an appropriate hypothetical to the VE.[2]

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White<br>United States Magistrate Judge

Date: September 6, 2013

## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of**

---

[2]  As the Court otherwise recommends a remand, Plaintiff's other assignments of error will not be addressed.

**Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**